UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELE SMITH,

        Plaintiff,

v.

MERCANTILE ADJUSTMENT
BUREAU, LLC,

        Defendant.
_____/

## Complaint

**I.**    **Introduction**

1. This is an action for damages, brought by a consumer against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

**II.**    **Jurisdiction**

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

**III.**    **Parties**

3. Plaintiff Michele Smith is an adult, natural person residing in Kent County, Michigan. Ms. Smith is a "consumer" and "person" as the terms are defined and used in the FDCPA. Ms. Smith is a "consumer," "debtor" and "person" as the terms are defined and used in

1

the MOC.

4. Defendant Mercantile Adjustment Bureau, LLC ("MAB"), also known in Michigan as Mercantile Adjustment Bureau of New York, LLC, is a New York limited liability company. MAB holds a certificate of authority to transact business in Michigan for the express purpose of "Debt Collections." The registered agent for MAB in Michigan is National Registered Agents, Inc., 712 Abbott Road, East Lansing, Michigan 48823. MAB uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. MAB regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. MAB is a "debt collector" as the term is defined and/or used in the FDCPA. MAB is licensed (No. 2401002079) by the State of Michigan to collect delinquent consumer debts in Michigan. MAB is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

## IV. Facts

5. Ms. Smith had a credit account (No. 5416577457005639) with Washington Mutual ("WaMu") which she used to purchase goods and/or services for personal, family and household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and used in the FDCPA and MOC.

6. WaMu or a successor in interest or assign of WaMu claimed that Ms. Smith failed to make timely payment on the account.

7. Ms. Smith disputes the account. Ms. Smith refuses to pay the alleged debt.

8. WaMu or a successor in interest or assign of WaMu charged off and sold the allegedly delinquent account and related, alleged debt.

9. An entity named Equable Ascent Financial, LLC ("EAF") claimed to have purchased the charged-off account and related, alleged debt. EAF uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. EAF is a "debt collector" as the term is defined and/or used in the FDCPA.

10. EAF placed the account for collection with defendant MAB.

11. In 2012, MAB placed a telephone call to a telephone number that belonged to Ms. Smith's parents and left the following message on a telephone answering machine that belonged to Ms. Smith's parents: "Hello. This is a message for Michele A. Smith. If you are not Michele A. Smith, please disconnect this call. By continuing to listen to this message, you acknowledge you are, Michele A. Smith. This is Tammy Franco from Mercantile Adjustment Bureau. Please contact me regarding an important business matter at 1-877-230-8371. This communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose."

12. MAB placed the above-described telephone call and left the above-quoted message on the telephone answering machine that belonged to Ms. Smith's parents for the purpose of attempting to collect an alleged debt from Ms. Smith.

13. The only reason MAB placed the above-described telephone call and left the above-quoted message on the telephone answering machine that belonged to Ms. Smith's parents was in connection with efforts by MAB to collect an alleged debt from Ms. Smith.

14. Ms. Smith's parents heard the above-quoted message left by MAB on the telephone answering machine that belonged to Ms. Smith's parents.

15. Ms. Smith's parents communicated to Ms. Smith the above-quoted message that

3

was left by MAB on the answering machine that belonged to Ms. Smith's parents.

16. MAB communicated information regarding the alleged debt directly and indirectly to Ms. Smith's parents.

17. MAB communicated information regarding the alleged debt directly and indirectly to Ms. Smith.

18. MAB did not obtain the prior consent of Ms. Smith to communicate with Ms. Smith's parents in connection with the collection of the alleged debt.

19. MAB did not obtain the prior consent of Ms. Smith to communicate to Ms. Smith's parents that MAB was attempting to collect a debt from Ms. Smith.

20. Ms. Smith has never given MAB permission to speak with Ms. Smith's parents regarding the alleged debt.

21. A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer. 15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

22. The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

23. A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt. 15 U.S.C. § 1692b(2).

24. The FDCPA states that a debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall, "only if expressly requested, identify his employer." 15 U.S.C. § 1692b(1).

4

25. MAB disclosed to Ms. Smith's parents the name of its company in the above-quoted message that was left by MAB on the answering machine that belonged to Ms. Smith's parents, without an express request for such information by Ms. Smith's parents, and thereby violated the FDCPA.

26. MAB used an automated dialing system to place the above-described telephone call, and used a pre-recorded and/or computer generated voice to leave the above-quoted message on the answering machine that belonged to Ms. Smith's parents, without regard to whether the message might by heard by someone other than Ms. Smith.

27. MAB could have used other methods to communicate with Ms. Smith.

28. MAB could have chosen to communicate with Ms. Smith by postal mail.

29. MAB could have chosen to communicate with Ms. Smith by speaking directly with Ms. Smith by telephone.

30. MAB could have chosen not to use an automated dialing system to place a telephone call to a telephone number and use a pre-recorded and/or computer generated voice to disclose that MAB was attempting to collect a debt from Ms. Smith.

31. MAB could have chosen to have a live person make the telephone call to Ms. Smith and then have the live person use discretion regarding whether to leave a recorded message for Ms. Smith on a telephone answering machine.

32. MAB, to reduce its business expenses and increase its profits, chose to use an auto-dialer to indiscriminately place telephone calls and leave pre-recorded and/or computer generated messages on telephone answering machines, without regard for the privacy of consumers such as Ms. Smith and without regard for the requirements of the FDCPA.

33. MAB violated 15 U.S.C. § 1692c(b) by leaving a recorded message on a telephone answering machine, which resulted in a communication to Ms. Smith's parents that MAB was attempting to collect an alleged debt from Ms. Smith. *Berg v. Merchants Association Collection Division, Inc.*, 586 F.Supp. 1336 (S.D. Fla. 2008).

34. MAB is a member of ACA International ("ACA").

35. ACA is a trade group for debt collectors. ACA has sent multiple writings to its members, including MAB, warning about the risks associated with violating the FDCPA by leaving a message on an answering machine or voice mail that could result in an unlawful disclosure to a third party that a consumer allegedly owes a debt.

36. MAB knowingly assumed the risk of violating the FDCPA by leaving a message on a telephone answering machine that MAB was calling to collect a debt, knowing that the message might be heard by someone other than Ms. Smith.

37. MAB in the pre-recorded and/or computer generated message left for Ms. Smith on the telephone answering machine that belonged to Ms. Smith's parents, warned others not to listen to the message, establishing that MAB recognized the likelihood that someone other than Ms. Smith might hear the message.

38. MAB knowingly assumed the risk of violating the FDCPA by leaving a message on an answering machine, stating that MAB was calling to collect a debt from Ms. Smith, with knowledge of the risk that the message might be heard by someone other than Ms. Smith.

39. It was not reasonable for MAB to assume that someone such as Ms. Smith's parents would obey MAB's command to "disconnect this call" in connection with a message left for their daughter on their own telephone answering machine and not listen to the full message.

Moreover, the command to "disconnect this call" made no sense, in that the message was left on a telephone answering machine and by then there was no live call to "disconnect."

40. The message left by MAB on the telephone answering machine that belonged to Ms. Smith's parents warned the listener to "disconnect this call" if the listener was not Ms. Smith. However, the message did not instruct the listener to delete the message before listening to the entire message. Moreover, the only way for the listener to obtain sufficient information for the purpose of making MAB stop calling was to listen to the entire message.

41. When MAB placed the above-described telephone call and left the above-quoted message on the telephone answering machine that belonged to Ms. Smith's parents for the purpose of attempting to collect an alleged debt from Ms. Smith, MAB knew or could have determined through any number of skip-tracing sources that the telephone number rang through to a telephone number that was listed in the name of someone other than Michele Smith.

42. MAB intentionally called the telephone number described above.

43. MAB did not maintain procedures reasonably adapted to avoid the above-described violations of the FDCPA.

44. Even if MAB did maintain procedures reasonably adapted to avoid the above-described violations of the FDCPA, MAB failed to follow those procedures.

45. MAB failed to maintain procedures reasonably adapted to avoid disclosing to a third party that a consumer owed a debt. Instead, MAB left a recorded message for a consumer on an answering machine, knowing it was possible that the message might be heard by someone other than the consumer.

46. MAB failed to maintain procedures reasonably adapted to avoid disclosing to Ms.

7

Smith's parents that Ms. Smith owed an alleged debt. Instead, MAB left a recorded message for Ms. Smith on a telephone answering machine that belonged to Ms. Smith's parents, knowing that it was possible that the message might be heard by someone other than Ms. Smith.

47. MAB scripted and intended to speak the pre-recorded and/or computer generated words that were spoke by MAB when leaving the above-quoted message on the telephone answering machine that belonged to Ms. Smith's parents.

48. MAB has been sued multiple times for allegedly violating the FDCPA by using an automated dialing system to place a telephone call and using a pre-recorded and/or computer generated voice to deliver a message for a consumer in efforts to collect a debt which resulted in an unlawful disclosure to a third party that MAB was attempting to collect a debt from the consumer. Despite those lawsuits, MAB has made the business decision to continue to engage in debt collection practices that MAB knows will from time to time violate the law.

49. The acts and omissions of MAB and its employees done in connection with efforts to collect the alleged debt from Ms. Smith were done intentionally and wilfully.

50. MAB and its employees intentionally and wilfully violated the FDCPA and MOC.

51. As an actual and proximate result of the acts and omissions of defendant and its employees, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, humiliation and suffering for which she should be compensated in an amount to be established by jury and at trial.

**V.   Claims for Relief**

### Count 1– Fair Debt Collection Practices Act

52.   Plaintiff incorporates the foregoing paragraphs by reference.

53.   Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

- a)   Defendant violated 15 U.S.C. § 1692b;
- b)   Defendant violated 15 U.S.C. § 1692c;
- c)   Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt; and
- d)   Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff.

**Wherefore,** plaintiff seeks judgment against defendant for:

- a)   Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);
- b)   Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);
- c)   Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and
- d)   Such further relief as the court deems just and proper.

### Count 2 – Michigan Occupational Code

54.   Plaintiff incorporates the foregoing paragraphs by reference.

55.   Defendant has violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

- a)   Defendant violated M.C.L. § 339.915(m) by bringing to public notice that the

consumer is a debtor;

b) Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

c) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

d) Defendant violated M.C.L. § 339.919.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 339.916(2);

b) Treble the actual damages pursuant to M.C.L. § 339.916(2);

c) Statutory damages pursuant to M.C.L. § 339.916(2);

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2); and

e) Equitable relief pursuant to M.C.L. § 339.916(1).

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: October 10, 2012

Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com